IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

CK FRANCHISING, INC. :
:
:
v. : Civil Action No. DKC 2007-1852
:
DWAYNE A. FORD, et al. :
:

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this case is a motion to quash filed by Defendants (Paper 44). The court now rules pursuant to Local Rule 105.6, no hearing being deemed necessary. For the reasons that follow, the motion to quash will be denied, but a request for exemption will be granted.

**I. Background**

Plaintiff CK Franchising is the franchisor of Comfort Keepers in-home care franchises.[1] Defendants Dwayne A. Ford and Audrey S. Ford entered into a franchise agreement with Plaintiff in December 2002. The parties' relationship deteriorated and, on July 13, 2007, Plaintiff filed a complaint alleging breach of contract and defamation. (Paper 1). Plaintiff simultaneously filed a motion for temporary restraining order ("TRO"). (Paper 2).

---

[1] Because the court has filed previous memoranda with background information, only basic information will be repeated here. See Paper 35 for additional factual details.

On August 3, 2007, this court granted in part and denied in part Plaintiff's motion, holding that Defendants could continue to service current clients, but must deposit royalties into an escrow account. (Paper 16). The court also directed the parties to participate in mediation or arbitration. At that point, the case was stayed and closed administratively.

There were no further proceedings in this court until the following spring, when the parties were involved in arbitration and a discovery dispute arose. Thereafter, the parties participated in an arbitration hearing.

The arbitrator's opinion and award held that Plaintiff was the prevailing party, but did not prevail on all its claims or on damages. (Paper 28, Attach. 1). The arbitrator ultimately determined that:

> The administrative fees and expenses of the American Arbitration Association totaling $7,250.00 shall be borne entirely by Dwayne A. Ford and Audrey S. Ford, and the compensation and expenses of the arbitrator totaling $18,239.62 shall be borne entirely by Dwayne A. Ford and Audrey S. Ford. Therefore, Dwayne A. Ford and Audrey S. Ford shall reimburse CK Franchising Inc. the sum of $15,119.81, representing that portion of said fees and expenses in excess of the apportioned costs previously incurred by CK Franchising Inc., upon determination by CK Franchising Inc. that these incurred costs have been paid.

(*Id.*). Plaintiff filed a motion to modify award, arguing that the arbitrator's decision was erroneous, but the arbitrator denied the motion. On November 10, 2008, Plaintiff filed in this court a motion to confirm arbitration award and for attorney's fees. (Paper 28).

On April 22, 2009, the court granted Plaintiff's motion to confirm the arbitration award, denied Plaintiff's motion for attorney's fees, and closed this case. (Paper 32). Plaintiff subsequently filed a motion for reconsideration, which was denied by the court. (Paper 36). Presently pending is Defendants' motion to quash a writ of attachment issued by the clerk of the court. (Paper 44).

**II. Writs of Garnishment and Motion to Quash**

Garnishment, a "'form of attachment,'" is "'a means of enforcing a judgment' which 'allows a judgment creditor to recover property owned by the debtor but held by a third party, the garnishee.'" *Harbor Bank v. Hanlon Park Condo. Ass'n*, 153 Md.App. 54 (2003)(citation omitted). Under Maryland law, "[t]he judgment itself is conclusive proof of the judgment debtor's obligation to the judgment creditor." *Fico, Inc. v. Ghingher*, 287 Md. 150 (1980). State procedures govern the enforcement of a writ of garnishment of property. *See* Fed.R.Civ.P.69. This rule provides:

> A money judgment is enforced by a writ of execution, unless the court directs otherwise. The procedure on execution--and in proceedings supplementary to and in aid of judgment or execution--must accord with the procedure of the state where the court is located, but a federal statute governs to the extent it applies.

Fed.R.Civ.P. 69(a)(1). Because no federal statute applies to writs of execution, Md. Rules 2-641 -- 2-649 govern. A garnishment process is commenced when the judgment creditor files a request for a writ of garnishment pursuant to Md. Rule 2-645(b), as the Plaintiff in this case has done. Maryland's procedure requires that the judgment debtor be notified of the writ, of his right to contest the garnishment, and of the fact that exemptions are available for certain types of property. *See* Md. Rule 2-645(c)(4),(5). The clerk of the court then issues the writ to the garnishee. Md. Rule 2-645(c)(2).

The garnishee must file an answer admitting or denying that it holds the debtor's property or asserting a defense. Md. Rule 2-645(e). After a judgment debtor is notified of the writ, he may file a motion for exemption. *See* Md. Rule 2-643(c)(2)("Upon motion of the judgment debtor, the court may release some or all of the property from a levy if it finds that . . . the property is exempt from levy."). The motion to elect to exempt items of property or case must be filed within 30 days after a levy or

4

service of the writ of garnishment on the garnishee.  Md. Rules 2-643(d), 2-645(i).

On November 18, 2009, Plaintiff filed ex parte requests for two writs of garnishment for property of Defendants Dwayne and Audrey Ford.  (Papers 37, 38).  On November 24, 2009, the clerk of this court issued two writs of garnishment: one to Bank of America National Company ("Bank of America") and one to the Manufacturers and Traders Trust Company ("M & T").  (Paper 39, 40).  The writs indicated that the amount of judgment owed was $15,119.81, directed the garnishee(s) to file a written answer and informed Defendants that they could file a motion asserting a defense.

The writs were served on December 2, 2009.  (Paper 41.) Both potential garnishees filed answers in accordance with Md. Rule 2-645(e).  M & T indicated that it was unable to comply with the process because there was "No Account" that existed under the names indicated.  (Paper 42).  Bank of America, in its answer, indicated that Defendants did have a checking account at Bank of America that currently contained $780.99, and that the said amount would be held pending order of the court.  (Paper 43).  Bank of America also notified the court that it held a safe deposit box (contents unknown) in the names of the two Defendants.  (*Id.*).

Defendants filed their motion to quash the writ of garnishment making several claims on January 6, 2010. (Paper 44).[2] They state that the safe deposit box at Bank of America is empty, and they attempt to reserve their right to claim three different exemptions.

First they state that they do not waive their right to claim an exemption of any cash that may or may not be in the box to the "remaining limit of $6,000.00" under Md. Code Ann., Cts. & Jud. Proc. § 11-504(b)(5) and for up to $5,000 under § 11-504(f). They also argue that they qualify for an additional exemption of $5,000 for the value of any personal property found in the safe deposit box for the practice of their trade and profession, according to Md. Code Ann., Cts. & Jud. Proc., § 11-504(b)(1).

Pursuant to Maryland Rule 2-643(d), the judgment debtor may seek release of exempt property by filing a motion.

> (d) *Upon election of exemption by judgment debtor*. By motion filed within 30 days after a levy, the judgment debtor may elect to exempt from execution of the judgment selected items of property or cash not exceeding in amount the cumulative value permitted by law. The motion and any response to the motion may be accompanied by

---

[2] The deadline for filing the motion seeking an exemption expired on January 4, 2010. The motion was signed on January 2, 2010, and Plaintiff has not objected to the timeliness of Defendants' motion.

> a request for court review of the sheriff's appraisal made at the time of the levy. The court shall release from the levy items of cash or property selected by the debtor to the extent required by law.

Md. Rule 2-643(f). Defendants are correct that they may claim an exemption under § 11-504(b)(5) for "cash or property of any kind equivalent in value to $6,000." They may not, however, claim an exemption under § 11-504(f), as that section pertains only to bankruptcy proceedings. (See Md. Code Ann, Cts. & Jud. Proc. § 11-504(f), "In addition to the exemptions provided in subsection (b) of this section . . . in any proceeding under Title 11 of the United States Code, entitled 'Bankruptcy,' any individual debtor domiciled in this State may exempt . . ."). Finally, Defendants may also claim an exemption under § 11-504(b)(1) but, as the rule states, only for "wearing apparel, books, tools, instruments, or appliances, in an amount not to exceed $5,000 in value necessary for the practice of any trade or profession except those kept for sale, lease or barter."

Defendants also make several claims related to the amount of money that they owe Plaintiff. They claim that Plaintiff has not paid all that it owes to the American Arbitration Association ("AAA"), and that a courtesy discount was given by the Arbitrator on August 14, 2008 in the amount of $2,300. Finally, Defendants assert that Plaintiff has mitigated part or

all of its cost of the arbitration by the release of a levy on funds held in escrow in the amount of $5,592.61, which reduces the balance that Plaintiff owed to $9,527.20.

Defendants' contentions regarding the amount owed are incorrect. First, Plaintiff demonstrates by attachment of a financial statement from the AAA that it has paid all expenses required, including a final deposit of $952.31 that Defendants dispute in their motion. (Paper 45, Ex. 1).

Second, the contention by Defendants that a $2,300 discount should apply to the amount owed is also incorrect. In its final opinion and award the arbitrator clearly indicated that Defendants owe Plaintiff $15,119.81. This award is to reimburse Plaintiff for the payments it made to the AAA, and the courtesy discount did not reduce the amount that Plaintiff paid to the AAA. Plaintiff also notes that the award was issued two weeks after the courtesy discount was applied. The AAA's own records clearly indicate that Plaintiff paid $15,119.81 to the AAA and thus that is the amount that must be fully reimbursed by Defendants. (Paper 45, Ex. 1).

Finally, the arbitrator did not provide for the amount placed in escrow by Plaintiff to be factored into the amount owed by Defendants. Funds were held in escrow pursuant to a preliminary injunction order, but the escrow agent refunded the

8

amount in October 2009. Those funds do not act as a credit against the amount owed.

"A motion to quash is a proceeding in the nature of a petition to the Court, without an appearance to the merits of the case, to dismiss the attachment on the ground that the proceedings are defective. . . ." *Cole v. Randall Park Holding Co.*, 201 Md. 616, 625 (1953). Although Defendants may exempt the above named property, the writs issued were proper and Defendants have not alleged any defect in the proceedings. Bank of America currently holds $780.99 of funds that were in an account owned by Defendants. Those funds may be remitted to Defendants as they fall under the exemption amount. To the extent that the value of the contents of the safe deposit box owned by the Fords and held by Bank of America exceeds $5,219.01, Plaintiff is entitled to the property to satisfy the debt owed it.

**III. Conclusion**

For the foregoing reasons, Defendants' motion to quash will be denied, but the money in the account will be released to Defendants. Defendants and the Bank will be directed to open the safe deposit box in the presence of a representative of

Plaintiff and account for any property found therein.  A separate Order will follow.

```
              _____/s/_____
              DEBORAH K. CHASANOW
              United States District Judge
```